AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUL 18 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One Samsung SM-J260TI cellular phone
IMEI: 352475/1D/360247/8

Case No.   '19 MJ 3010

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) | Transportation of Certain Aliens and Aiding and Abetting |

The application is based on these facts:

See attached Affidavit of Agent Derek Nowak, United States Border Patrol

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Agent Derek Nowak, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

*Judge's signature*

City and state: San Diego, CA    Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (v)(II), Transportation of Certain Aliens and Aiding and Abetting, is one Samsung SM-J260TI cellular phone, IMEI: 352475/1D/360247/8 (the "Target Device").

The Target Device is currently in the possession of the United States Border Patrol as evidence and being held at 211 W. Aten Rd. Imperial, CA 92251.

## ATTACHMENT B

Authorization to search Target Device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the Target Device shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 7, 2019 to May 7, 2019:

- a. tending to identify attempts to smuggle aliens from Mexico into the United States;

- b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the smuggling of aliens from Mexico into the United States;

- c. tending to identify co-conspirators, criminal associates, or others involved in the smuggling of aliens from Mexico into the United States;

- d. tending to identify travel to or presence at locations involved in the smuggling aliens from Mexico into the United States, such as stash houses, load houses, or delivery points;

- e. tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

- f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (v)(II), Transportation of Certain Aliens and Aiding and Abetting.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Derek Nowak, having been duly sworn, declare and state as follows:

## I

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search one Samsung SM-J260TI cellular phone, IMEI: 352475/1D/360247/8 ("Target Device"), and seize evidence of crimes, specifically violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (v)(II), Transportation of Certain Aliens and Aiding and Abetting (Felony) (the "Target Offenses").

2. Target Device was seized at the time of Rafael Ramiro-Medina's (RAMIRO) arrest for the Target Offenses on May 7, 2019, near Calexico, California. On his post-arrest Property Inventory Form, RAMIRO claimed ownership of the Target Device. The Target Device is currently in the possession of United States Border Patrol ("USBP") at 211 W. Aten Rd. Imperial, CA 92551.

3. This search of the Target Device supports an investigation and prosecution of RAMIRO for the Target Offenses. Based on the information below, there is probable cause to believe that a search of the Target Device, as described in Attachment A, will produce evidence of the Target Offenses, as described in Attachment B.

4. The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in alien smuggling and immigration violations, including the Target Offenses. The evidence and information contained herein was developed from interviews and my review of documents, reports, and evidence related to this case. Because I make this affidavit for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all of the information known by me or other federal agents regarding this investigation, but only sets forth those facts believed to be necessary to establish probable cause. Dates and times are approximate, and refer to Pacific Standard Time (PST) unless otherwise specified.

## II

## **AFFIANT'S EXPERIENCE AND TRAINING**

5. I am an Agent with the United States Border Patrol (USBP) within the Department of Homeland Security. I have been a USBP Agent since September 5, 2011 having completed the United States Border Patrol Academy at the Federal Law Enforcement Training Center (FLETC) in Artesia, New Mexico. As part of this training, I attended criminal investigation training that included course studies in, among other things, criminal law, constitutional law, search and seizures, and courtroom procedure.

6. As a USBP Agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41 of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As a USBP Agent, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

7. My work as a USBP Agent includes investigations related to unlawful aliens and alien smuggling. In the course of my duties, I have worked as the case agent conducting specific alien smuggling and illegal entry investigations. During my assignments, I have participated in interviews of defendants and witnesses relative to their illegal entry and alien smuggling. Through my observations and these interviews, I have gained a working knowledge and insight into the operational habits of unlawful aliens and alien smugglers, with particular emphasis on those who attempt to illegally enter, transport, harbor, or smuggle unlawful aliens into the United States from Mexico.

8. Through the course of my training, investigations, work experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals, and they do so by utilizing cellular telephones, pagers, and portable radios to maintain communications with co-conspirators in order to further their criminal activities. As an agent with the USBP, I

2

am aware from my participation in alien smuggling cases that telephones are often used by load drivers to communicate with smugglers. Typically, load drivers transporting aliens within the United States are in telephonic contact with co-conspirators immediately prior to and following the entry of unlawful aliens into a load vehicle, at which time they receive instructions on where and when to pick up the unlawful aliens and where to deliver them.

9. Based upon my training and experience as a U.S. Border Patrol Agent, and consultations with law enforcement officers, I submit the following:

   a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, email, Internet, social media applications, and text and voice messages.

   b. Alien smugglers will use cellular telephones because they are able to monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations within the United States.

   d. Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity, including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints or Ports of Entry within the United States.

   f. Alien smugglers will often use cellular phones and smart devices to guide illegal aliens who are crossing into the United States, providing them instructions as to where to go and what to do during a smuggling event. This is often done from over watch positions on high ground in Mexico or at the border fence. This allows smugglers to remotely control the actions of the smuggled aliens, while insulating themselves from criminal prosecution.

   g. Conspiracies involving alien smuggling often generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators.

3

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. Based upon my training and experience as a USBP Agent, and consultations with law enforcement officers experienced in smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training and education, I have learned that searches of cellular/mobile telephones associated with smuggling investigations yield evidence:

    a. tending to identify attempts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the smuggling of aliens from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the smuggling of aliens from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling aliens from Mexico into the United States, such as stash houses, load houses, or delivery points;

4

e. tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## III

## STATEMENT OF PROBABLE CAUSE

12. On May 7, 2019, at approximately 5:00 p.m., United States Border Patrol Agent (BPA) A. Yepez observed from a Remote Video Surveillance System (RVSS) four individuals swimming northbound across the All-American Canal (AAC) approximately 12 miles east of the Calexico, West Port of Entry. In this area, a metal wall that is approximately 20 feet tall marks the United States-Mexico border. The AAC is a man-made irrigation canal that runs east to west north of the wall and is approximately one quarter of a mile north of the wall in this area. Access to the area south of the AAC (between the AAC and wall) is restricted to Imperial Irrigation District employees and BPAs through locked gates.

13. BPA Yepez monitored the four individuals as they reached the north bank of the AAC, exited the canal, and ran northbound into some thick brush.

14. Approximately 20 minutes later, Supervisory BPA A. Mills observed the four individuals run northbound from the brush through an agricultural field toward Highway 98. Highway 98 is approximately one quarter of a mile north of the AAC in this area. In response to BPA Mills' observations, RVSS operators observed the four individuals run to the south side of Highway 98 and lay down. Within minutes, BPA Mills observed a silver coupe, later identified as a 2000 BMW M3 bearing California License Plate 8G0S108 (the "Vehicle") travelling slowly on Highway 98. The Vehicle stopped just west of the four individuals' location, made a U-turn, and stopped again. All four individuals boarded the Vehicle, and the Vehicle began travelling east on Highway 98.

15. BPA Alfaro pulled behind the Vehicle in a marked unit. The driver of the Vehicle, later identified as RAMIRO, then turned the Vehicle south into the dirt toward the AAC. RAMIRO stopped the Vehicle on the bank of the AAC and the four individuals exited and ran from the Vehicle into nearby brush. RAMIRO then fled in the Vehicle eastbound on the AAC bank. RAMIRO travelled approximately one half-mile on the AAC bank and then made a U-turn back westbound. During the U-turn, the Vehicle became momentarily stuck in the dirt. BPA Alfaro conducted a vehicle stop and placed RAMIRO under arrest.

16. While BPA Alfaro was engaged with RAMIRO, BPAs Camerana and Kinkead located the four individuals who ran from the Vehicle hiding in the brush. Those four individuals were later identified as Elmer Evelio Chama-Cahuec, Ricardo Dominguez-Espinoza, Gerson Ronaldo Gomez-Chama, and Ruben Rojas-Ramos. Dominguez and Rojas stated they were citizens of Mexico; Chama and Gomez stated they were citizens of Guatemala. All four aliens stated they were illegally present in the United States. In subsequent interviews by BPA, all four were shown a six-pack photographic line-up and all four aliens identified RAMIRO as the driver of the Vehicle. The four aliens further stated they were paying between $1,000 and $5,000 to be smuggled into the United States. Dominguez further stated that he was instructed on how to cross the United States-Mexico border; Dominguez was told, among other things, that a grey BMW would pick the group up when they reached the highway. Rojas similarly stated that the group was instructed to run north and wait for a silver BMW vehicle to pick them up.

17. On May 8, 2019, a complaint was filed charging RAMIRO with Transportation of Illegal Aliens (Felony) in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). On May 31, 2019, Ramiro was charged by indictment with four counts of Transportation of Certain Aliens and Aiding and Abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II), in the Southern District of California in case number 19-CR-02028-GPC.

18. Based upon my experience and investigation in this case, I believe that RAMIRO, as well as other persons, were involved in an ongoing conspiracy to smuggle aliens

6

into and within the United States. Based on my experience investigating alien smugglers, I also believe that RAMIRO may have used the Target Device to coordinate with co-conspirators regarding the smuggling of aliens into and within the United States.

19. Based on my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I further believe that information relevant to the alien smuggling activities and co-conspirators, such as recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of the Target Device and may identify other persons involved in alien smuggling activities.

20. Alien smuggling conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual attempted entry and smuggling activity in the United States. Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. Given this, I request permission to search the Target Device for items listed in Attachment B beginning on March 7, 2019, up to and including May 7, 2019. The date range for the search is based on the date of RAMIRO's arrest, as well Dominguez's and Rojas' statements that they were told a vehicle matching the Vehicle driven by RAMIRO would smuggle them further into the United States, evidencing RAMIRO's prior knowledge and involvement in the conspiracy. Based on my training and experience, RAMIRO likely would have been in communication with co-conspirators to plan and coordinate this smuggle attempt in the two months leading up to his arrest.

## IV
## **METHODOLOGY**

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be

7

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the Target Device and subject them to analysis. All forensic analysis of the data contained within the Target Device and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

//
//

## V

## CONCLUSION

24. Based on all of the facts and circumstances described above, my training and experience, and consultations with other law enforcement officers, there is probable cause to conclude that Defendant utilized the Target Device to facilitate the smuggling of unlawful aliens in violation of Title 8, United States Code, Section 1324.

25. Because the Target Device was promptly seized during the investigation of Defendant's smuggling activities and has been securely stored with RAMIRO's personal property, there is probable cause to believe that evidence of illegal activities committed by Defendant continues to exist on the Target Device. As stated above, the date range for this search is from March 7, 2019 through May 7, 2019.

26. Based upon my experience and training, consultation with other agents in Alien Smuggling investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Derek Nowak
Border Patrol Agent, United States Border Patrol

Sworn to and subscribed before me this __18th__ day of July, 2019.

_____
THE HON. KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

9